UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD JOHN CRAIGE,

              Petitioner,              Case No. 2:18-cv-12154

v.

                                 Honorable Sean F. Cox

SHERRY BURT,

              Respondent.

_____/

**OPINION AND ORDER
GRANTING RESPONDENT'S MOTION TO DISMISS,
DISMISSING THE PETITION WITH PREJUDICE,
DENYING A CERTIFICATE OF APPEALABILITY,
AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS***

This matter has come before the Court on petitioner Bernard John Craige's *pro se*
habeas corpus petition under 28 U.S.C. § 2254 and respondent Sherry Burt's motion to
dismiss the petition. Although Respondent argues in her motion to dismiss that Petitioner
did not exhaust state remedies for all his claims, the Court has determined that none of
Petitioner's claims warrant habeas relief. Accordingly, the Court will grant Respondent's
motion on other grounds and dismiss the petition with prejudice.

**I. Background**

**A. The Charges, Trial, Sentence, and Direct Appeal**

Petitioner was charged in Gratiot County, Michigan with one count of criminal
sexual conduct (CSC) in the first degree, *see* Mich. Comp. Laws § 750.520b(1)(b) (sexual
penetration of a person who is 13, 14, or 15 years of age and is related to the defendant
or is a member of the same household), and two counts of CSC in the third degree, *see*
Mich. Comp. Laws § 750. 520d(1)(d) (sexual penetration of a person who is related to the

defendant by blood or affinity to the third degree). The complainant was Petitioner's biological daughter, whom the Court will refer to as "JS." The Michigan Court of Appeals accurately summarized the facts as follows:

> JS, defendant's daughter, testified that defendant had sexually abused her from about the time she was 12 years old until she was 17 years old. She testified that the last instance occurred in a barn on an abandoned farm, where defendant had taken her on his motorcycle. JS testified that afterward she told her stepmother, Nancy Craige, about the abuse, and that her stepmother said that she "knew there was something wrong." According to JS, Nancy told her to get evidence that defendant was abusing her.

> JS downloaded a recorder on her phone and recorded two conversations that she had with defendant. Although the conversations do not explicitly refer to sexual relations, JS testified that they were indeed discussing sexual relations, and that defendant was gesturing to his "private parts" during the conversations. In one conversation, JS told defendant, "[I]t can't be like last time," to which defendant replied, "Your ass dragged the ground, man."

> JS reported the abuse to the police. She led officers to the barn where she alleged that defendant had assaulted her. Police searched for fingerprints and DNA evidence in specific areas that JS had told them that she or defendant had touched while they were in the barn. Although the police recovered DNA and a fingerprint, they were determined to be unsuitable for comparison.

> A police officer contacted defendant, who denied sexually abusing JS. The officer testified that defendant, without prompting, said that he knew that JS had recorded their conversations, and defendant tried to explain the "ass dragging" comment. According to the officer, defendant said that he was referring to the fact that the foot pegs on his motorcycle had been broken, and that JS was "dragging her ass by riding without foot pegs. . . ." Defendant allegedly told the officer that he and JS had visited the farm to see if the house could be a "fix-up" for JS and her boyfriend.

> JS also told police that defendant had a scar on his penis and that he was circumcised. Defendant was ordered by the court to have his penis photographed by police in an erect state. Although defendant was unable to achieve an erection, his flaccid penis was photographed, and the photograph showed that he was circumcised and that he had a scar.

2

At trial [in Gratiot County Circuit Court], defendant denied sexually abusing JS, and claimed that she fabricated the allegations after he would not let her live with her boyfriend. He reiterated his claim that they had visited the abandoned farm because he thought it could be a property for JS and her boyfriend to buy. He further explained that he was a licensed contractor and could have helped repair the property. Defendant denied telling police that he knew that JS had recorded him, explaining as follows:

> I think [the officer] mentioned to me something about was I calling her names and saying something. I said—said something about her, she's so short her butt is dragging the ground. She was going to jump up on the motorcycle foot boards . . . and they're very dangerous, they're on a swivel-type deal, and so if she was to jump on it improperly, she would go right down and bite the dirt . . . .

Defendant also testified that a dog bit his penis when he was 12 years old. Finally, defendant presented four character witnesses, two siblings of JS and two of his former girlfriends, who opined that JS is untruthful.

*People v. Craige*, No. 321233, 2015 WL 4604648, at *1-*2 (Mich. Ct. App. July 30, 2015) (unpublished).

On February 14, 2014, the jury found Petitioner guilty, as charged, of one count of first-degree CSC and two counts of third-degree CSC. The trial court sentenced Petitioner on March 17, 2014, to concurrent terms of fifteen to fifty years in prison for the first-degree CSC and seven to fifteen years in prison for the third-degree CSC.

Petitioner appealed as of right to the Michigan Court of Appeals. He claimed that: (1) his substantial rights were severely affected by the improper admission of testimony regarding DNA and fingerprint evidence; and (2) he was deprived of his constitutional right to effective assistance of counsel by defense counsel's failure to (a) file a motion in limine or object at trial to the admission of testimony regarding DNA and fingerprint

evidence, (b) properly investigate the case, prepare for trial, and present a defense, and (c) ensure that the victim's drawing of his penis was admitted in evidence.

The Michigan Court of Appeals rejected most of Petitioner's claims, but remanded the case to the trial court for an evidentiary hearing on Petitioner's claim that defense counsel was ineffective for failing to produce his ex-wife, Nancy Craige (currently, Nancy Hoffman), as a defense witness. The Court of Appeals thought there was a reasonable probability that Hoffman's proposed testimony would have led to a different result, because she wrote in a post-trial affidavit or letter that she heard JS (1) threaten to "get" Petitioner when Petitioner told her she could not live with her boyfriend and (2) admit that she falsely accused her stepfather of sexually abusing her. Hoffman also averred in an affidavit that she would have testified, contrary to JS's testimony, that she did not tell the victim that she knew all along Petitioner was abusing her and that, instead, she had responded to JS's disclosure of the abuse by asking, "Are you sure?"

*See id.*, 2015 WL 4604648, at *5-*7.

On remand, the trial court conducted an evidentiary hearing where –

[d]efense counsel denied that Hoffman had told him the substance of her proposed testimony, while Hoffman maintained that she did. Defense counsel explained that he chose not to call Hoffman because she was a "live wire" and "she had given me the impression that she may lie and she had given conflicting statements about certain things." He further testified that Hoffman did not want to hurt defendant's case with her testimony and he was concerned that her testimony may do so. Defense counsel specifically maintained that his notes showed that Hoffman had stated that she would deny statements she had made to the police. Hoffman denied that she told counsel she would lie on the witness stand.

*People v. Craige*, No. 333013, 2017 WL 3043802, at *1 (Mich. Ct. App. July 18, 2017). As further explained by the state court,

[a]t the conclusion of the testimony, the trial court issued an opinion and order in which it indicated that it had considered Hoffman's proposed testimony and found that it would have had "limited value" at defendant's trial. The trial court also discussed defense counsel's reasons for not calling Hoffman, and concluded that defense counsel "made an informed decision that calling Ms. Hoffman [was] fraught with more potential problems than benefits for [defendant]." The trial court was also "satisfied" that defense counsel's decision to not call Hoffman did not prejudice defendant. Accordingly, the trial court determined that defendant had failed to show that he was denied the effective assistance of counsel.

*Id.*

Following the remand, the Michigan Court of Appeals concluded that Petitioner had failed to carry his burden of demonstrating ineffective assistance of counsel. Accordingly, the Court of Appeals affirmed Petitioner's convictions. *See id.* at *3.

Petitioner then appealed to the Michigan Supreme Court where he appears to have raised the same issues that he presented to the Michigan Court of Appeals and several other claims about his trial attorney. He also moved to amend his application for leave to appeal with a claim that the trial court erred when it denied his motion for new trial regarding trial counsel's performance. On March 5, 2018, the Michigan Supreme Court granted the motion to amend, but denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Craige*, 907 N.W.2d 563 (Mich. 2018).

### B. The Post-Appellate Proceedings and Habeas Corpus Petition

On March 16, 2018, Petitioner filed a *pro se* motion for relief from judgment that challenged his sentence and his trial and appellate attorneys' failure to raise the sentencing issues in the trial court and on appeal. In a *pro se* supplemental brief, he argued that: (1) the trial judge (a) pierced the veil of judicial impartiality, (b) created a

presumption in favor of the prosecution, (c) invaded the province of the jury, and (d) infringed on his right to be tried by a neutral and detached judge; (2) trial counsel's complete failure to conduct pretrial investigative interviews of prosecution witnesses constructively deprived him of his right to counsel; and (3) appellate counsel was "good cause" for his failure to raise these issues on direct appeal.

The trial court denied Petitioner's motion for relief from judgment without addressing the issues set forth in Petitioner's supplemental brief. The court merely addressed Petitioner's claims about his trial and appellate attorneys and then concluded that the attorneys were not ineffective. *See People v. Craige*, No. 13-6802-FC (Gratiot Cty. Cir. Ct. May 3, 2018). Petitioner did not appeal the trial court's decision. In fact, he attempted to withdraw his motion after the motion had already been denied. *See* Appendix to Respondent's Mot. to Dismiss Petitioner's Application for Writ of Habeas Corpus, Dkt. #7

On July 9, 2018, Petitioner filed his habeas corpus petition. His four grounds for relief are: (1) his substantial rights were severely affected by the improper admission of testimony regarding DNA and fingerprint evidence; (2) defense counsel deprived him of his constitutional right to effective assistance of counsel by not filing a motion in limine or objecting at trial to testimony about the DNA and fingerprint evidence; (3) the trial judge pierced the veil of judicial impartiality, created a presumption in favor of the prosecution, and invaded the province of the jury by classifying the witness as a victim and by expressing his dissatisfaction with the jury's verdict; and (4) defense counsel failed to

6

subject the prosecution's case to meaningful adversarial testing by not investigating or conducting any pretrial investigative interviews of prosecution witnesses.

After filing his habeas petition, Petitioner filed another motion for relief from judgment in the state trial court. He claimed that: (1) appellate counsel was ineffective for failing to (a) research or investigate facts and (b) raise certain issues in the appeal of right; (2) the prosecution violated his rights by (a) failing to properly disclose exculpatory evidence and (b) allowing JS to testify that she did not have a cell phone and was fourteen years old when she played varsity softball; and (3) trial counsel was ineffective for failing to (a) investigate, (b) move to have the prosecutor disclose exculpatory evidence, (c) present or interview exculpatory witnesses, and (d) object to the prosecutor's removal of evidence. *See* Mot. for Relief from J., Dkt. #6-16. The trial court denied the motion because the issues lacked merit and could have been raised in a *pro se* supplemental brief on appeal. *See People v. Craig (sic),* No. 13-6802-FC (Gratiot Cty. Cir. Ct. Feb. 14, 2019), Dkt. #8, PageID 1149. Petitioner apparently tried to appeal the trial court's decision, *see* Dkt. #8, PageID. 1143, but the Court has found no record of an appeal from that decision.

## II. Respondent's Motion to Dismiss

Respondent argues in her motion to dismiss the petition that Petitioner failed to exhaust state remedies for his third and fourth claims and, therefore, the Court should dismiss the petition under 28 U.S.C. § 2254(b)(1)(A). The doctrine of exhaustion of state remedies requires habeas petitioners to fairly present the factual and legal basis for each of their claims to the state court of appeals and state supreme court before raising the

claims in a federal habeas petition.  *See* 28 U.S.C. § 2254(b)(1); *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).  The exhaustion rule, however, is not a jurisdictional requirement.  *Castille v. Peoples*, 489 U.S. 346, 349 (1989).  A federal district court may deny a habeas petition on the merits, despite the petitioner's failure to exhaust available state remedies.  28 U.S.C. § 2254(b)(2).

Petitioner's claims do not warrant habeas relief.  Accordingly, the Court will proceed to address the merits of Petitioner's claims rather than dismiss the petition for failure to exhaust state remedies.

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.' "  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (quoting 28 U.S.C. § 2254(d)).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the

8

benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Thus, "[o]nly an 'objectively unreasonable' mistake, [*White v. Woodall*, 572 U.S. 415, 419 (2014)], one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, __ F.3d __, __, No. 17-6157, 2019 WL 4126667, at *2 (6th Cir. Aug. 30, 2019) (quoting *Richter*, 562 U.S. at 103). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV.  Analysis

### A.  The Admission of Testimony Regarding DNA and Fingerprint Evidence

Petitioner alleges that his rights were severely affected by the improper admission of testimony regarding DNA and fingerprint evidence. The evidence was collected in the barn where Petitioner allegedly assaulted JS on July 7, 2012, but, according to Petitioner,

the evidence did not prove he was present in the barn, let alone that he sexually assaulted JS there. Petitioner also asserts that testimony about the DNA and fingerprint evidence was unnecessary, prejudicial, irrelevant, and inadmissible under the Michigan Rules of Evidence.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because Petitioner did not object to the evidence at trial. Although the Court of Appeals agreed with Petitioner that the forensic evidence was irrelevant, the Court of Appeals concluded that the admission of the evidence did not amount to plain error because it was not decisive to the outcome of the trial.

State-court rulings on the admission of evidence under state law usually are not questioned in a federal habeas corpus proceeding, *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988), because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

A state court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief unless the error rendered "the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70). "[S]tates have wide latitude with regard to evidentiary matters under the Due Process Clause," and "as a general matter, state-court evidentiary rulings cannot rise to the level of due process violations unless they offend[s] some principle of justice

10

so rooted in the traditions and conscience of our people as to be ranked as fundamental."
*Wilson v. Sheldon*, 874 F.3d 470, 475-76 (6th Cir. 2017) (quotation marks and citations omitted).

The Michigan Court of Appeals determined that testimony about the DNA and fingerprint evidence was irrelevant because Petitioner admitted to being in the barn with JS on July 7, 2012. *See* 2/12/14 Trial Tr. at 191-92; 2/13/14 Trial at 70-71, 75-76. Nevertheless, the evidence was found in the specific locations that JS claimed she and Petitioner had touched on July 7, 2012. Thus, the evidence had some probative value, and testimony about it was not unfairly prejudicial because the jury was made aware that test results on the evidence were inconclusive. *See* 2/12/14 Trial Tr. at 185-87. As the Michigan Court of Appeals pointed out, neither party benefitted from, nor was substantially disadvantaged by, admission of the evidence.

To conclude, the admission of testimony regarding the DNA and fingerprint found in the barn was not so fundamentally unfair as to deprive the Petitioner of his constitutional right to due process. Therefore, he is not entitled to habeas corpus relief on his evidentiary claim.

**B. Defense Counsel's Failure to File a Motion in Limine or to Object at Trial**

Petitioner alleges next that his trial attorney deprived him of effective assistance of counsel by not moving to exclude testimony about the DNA and fingerprint evidence or by not objecting to the testimony at trial. Petitioner contends that the evidence did not prove he was present in the barn and, therefore, a detective's testimony about the

evidence was unfairly prejudicial. The Michigan Court of Appeals rejected this claim on direct review.

The clearly established federal law is *Strickland v. Washington,* 466 U.S. 668 (1984). *Pinholster*, 563 U.S. at 189. To establish a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is difficult. *Richter*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* (internal and end citations omitted).

As noted above, test results on the DNA and fingerprint found in the barn provided to be inconclusive. Defense counsel, therefore, was not ineffective for failing to object to testimony about the evidence. To his credit, he used the inconclusiveness of test results on the DNA swab and fingerprint as part of the defense that Petitioner was innocent and that the prosecution had not proved its case beyond a reasonable doubt. *See* 2/12/14 Trial Tr. at 88-89; 2/13/14 Trial Tr. at 99-101.

"There are countless ways to provide effective assistance in any given case," *Strickland*, 466 U.S. at 689, and defense counsel's approach to the evidence was reasonable. Further, the state appellate court reasonably applied *Strickland* and concluded that Petitioner had not overcome the presumption that defense counsel's performance was sound trial strategy. Given the deference due to defense counsel's performance and to the state appellate court's decision, habeas relief is not warranted on Petitioner's claim.

### C. The Trial Judge

Petitioner's third claim alleges that the state trial judge pierced the veil of judicial impartiality, created a presumption in favor of the prosecution, and invaded the province of the jury by (1) classifying the witness as a victim and (2) expressing his dissatisfaction with the jury's verdict on the first-degree CSC charge. Petitioner raised this issue in the supplemental brief that supported his first motion for relief from judgment. No state court addressed the merits of the claim.

AEDPA, "by its own terms is applicable only to habeas claims that were 'adjudicated on the merits in State court . . . .' " *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) (quoting 28 U.S.C. § 2254(d)).  When, as in this case,

> the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.  *Williams v. Coyle*, 260 F.3d 684, 706 (6th Cir. 2001) (applying pre-AEDPA standards to a habeas petition filed pursuant to § 2254 because "no state court reviewed the merits of [the] claim").  Instead, this court reviews questions of law and mixed questions of law and fact de novo. *Id.*

*Id.*

### 1. Clearly Established Federal Law

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "requires a 'fair trial in a fair tribunal,' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (quoting *Withrow v. Larkin*, 421 U.S. 35, 46 (1975)). However, courts ordinarily "presume that public officials have properly discharged their official duties." *Id.* at 909 (quotation marks and end citations omitted).

To prevail on his claim, Petitioner must show "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).  A judge's remarks ordinarily are not a basis for a bias or partiality claim unless the remarks "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."  *Liteky v. United States*, 510 U.S. 540. 555 (1994). A judge's ordinary efforts at courtroom administration also are immune from a claim of bias or partiality.  *Id.* at 556.

14

## 2. Referring to JS as a Victim

Petitioner asserts that the state trial judge was biased against him because the judge referred to JS as a victim three times during *voir dire*. *See* 2/12/14 Trial Tr. at 8-9. At the time, however, the trial judge was explaining the charges against Petitioner. It was proper to refer to JS as a victim because Michigan's CSC statute defines "victim" as "the person alleging to have been subjected to criminal sexual conduct." Mich. Comp. Laws Ann. § 750.520a(s). Furthermore, the judge did not use the term "victim" during his charge to the jury at the close of the case. Instead, the judge referred to JS by name or as "the complainant." *See* 2/13/14 Trial Tr. at 110, 112-13.

Nothing in the trial judge's remarks reveal a high degree of favoritism or antagonism that made fair judgment impossible. Therefore, Petitioner has failed to show that the trial judge was biased against him.

Furthermore, even if use of the word "victim" was ill-advised, the trial judge instructed the jurors that neither the charges, nor his comments, rulings, and instructions were evidence, *id.* at 106, and that the jurors should not let sympathy or prejudice influence their decision, *id.* at 104. The judge stated that, if the jurors thought he had an opinion on how the case should be resolved, they were mistaken because he was comfortable with letting the jurors determine whether Petitioner was guilty or innocent. *Id.* at 106. The judge made it very clear that Petitioner was presumed innocent and that, if the jurors were not persuaded that the prosecutor had proved her case beyond a reasonable doubt, it was their job to find Petitioner not guilty. *Id.* at 105. These

instructions cured any error caused by the trial court's use of the term "victim" during its preliminary remarks to the jury on the first day of trial.

### 3. Expressing Dissatisfaction with the Verdict

Petitioner alleges that the trial judge expressed dissatisfaction with the jury's verdict on the first count, which charged Petitioner with first-degree CSC. Petitioner has not supported his claim with any details, but when he raised the claim in state court, he alleged that, after the jury foreman announced that Petitioner was not guilty of first-degree CSC, the trial judge took off his glasses, threw the glasses across the bench, pointed his finger at the jury foreman, and exclaimed, "What? Are you sure?" *See* Defendant-Appellant's Supplemental Brief in Support of Mot. for Relief from J., at 3-4, Dkt. #6-14, PageID. 690-91.

Petitioner's version of the facts is not supported by the record. The transcript indicates that the foreperson of the jury handed the verdict form to the court officer who handed the form to the trial judge. The trial judge then announced that, according to the verdict form, the jury found Petitioner not guilty of CSC in the first-degree, but guilty of two counts of third-degree CSC. 2/14/14 Trial Tr. at 4. The jury foreperson immediately responded to the trial judge's reading of the verdict form by stating that she thought she had checked the wrong blank on the form. She explained that the "not guilty" mark next to the first-degree CSC charge was not correct, and that it should read "guilty." *Id.* at 4-5. The trial judge then polled the jury on the first count, and each of the jurors indicated that his or her verdict was "guilty" of first-degree CSC. The judge subsequently stated that he was placing an "X" on the verdict form to show that the jury's unanimous verdict

was "guilty" on count one. The jury foreperson assured the trial judge that nothing the judge had said was incorrect.  *Id.* at 5-7.

Petitioner has failed to show that the trial judge expressed dissatisfaction with the jury's verdict.  The trial judge merely announced the jury's verdict and then polled the jury after the jury foreperson indicated that she had incorrectly recorded the jury's verdict on the first count.  The judge never stated whether he agreed or disagreed with the jury's verdict.  He simply took steps to ensure that the foreperson's oral comments reflected the jury's actual verdict.  Petitioner, therefore, is not entitled to relief on his claim of judicial bias.

### D.  Trial Counsel's Alleged Failure to Investigate and Interview

In his fourth and final claim, Petitioner alleges that his trial attorney failed to subject the prosecution's case to meaningful adversarial testing.  Specifically, Petitioner contends that his attorney failed to investigate or conduct any pretrial investigative interviews of prosecution witnesses.  Petitioner raised this claim in the supplemental brief that he submitted to the state trial court after he filed his first motion for relief from judgment. Because no state court addressed the claim on the merits, this Court's review is *de novo. Maples,* 340 F.3d 433 at 436.

### 1.  Clearly Established Federal Law

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right "to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  This "right to counsel is the right to the effective assistance of counsel," *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970), and, as noted above, an attorney

is constitutionally ineffective if his or her performance was deficient and the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. " 'In certain Sixth Amendment contexts,' however, 'prejudice is presumed.' " *Garza v. Idaho*, 139 S. Ct. 738, 744 (2019) (quoting *Strickland*, 466 U.S. at 692). For example, "prejudice is presumed 'if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing.' " *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659 (1984)).

### 2. Application

Petitioner's trial attorney participated in *voir dire*, gave an opening statement, cross-examined prosecution witnesses, made appropriate objections, and produced four witnesses who testified that JS was untrustworthy, not a truthful person, or a liar. *See* 2/13/14 Trial at 32, 42 (Andrea Taipalus's testimony); *id.* at 46-47 (Kathleen Braun's testimony); *id.* at 57 (Brodie Craige's testimony); *id.* at 65 (Kathy Thomas's testimony). Defense counsel also called Petitioner as a witness so that Petitioner could provide his version of the facts. *See id.* at 67-73. At the close of the case, defense counsel gave a closing argument and urged the jury to find Petitioner not guilty. *Id.* at 98-101. Defense counsel's trial performance demonstrates that he subjected the prosecution's case to meaningful adversarial testing.

Petitioner, nevertheless, contends that defense counsel did not investigate or interview prosecution witnesses. Defense attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. But "reasonably diligent counsel may draw a

line when they have good reason to think further investigation would be a waste."
*Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

Only three prosecution witnesses testified at Petitioner's trial: Petitioner's daughter, JS; Mark Williams, the detective assigned to the case; and Dr. Kurt Anderson, the physician who examined Petitioner. Both JS and the detective testified at the preliminary examination, and even though Petitioner's trial attorney did not represent Petitioner at the preliminary examination, the transcript of the preliminary examination was available to counsel months before trial. It also appears that defense counsel had access to Detective Williams' police reports concerning his interviews with both JS and Petitioner.

The third prosecution witness was Dr. Kurt Anderson who testified that he examined Petitioner on two occasions to determine whether Petitioner had any scars or abnormalities on his penis. The purpose of this testimony, no doubt, was to help the jury assess JS's credibility, because she claimed to know about a scar on Petitioner's penis. *See* 2/12/14 Trial Tr. at 142-46.

Although defense counsel apparently did not interview any prosecution witnesses about the scar, he was aware that the scar was an issue because there were court orders directing Petitioner to be examined by a physician and photographed for the purpose of determining whether the scar existed. He attempted to minimize JS's testimony about the scar by eliciting testimony from Petitioner's two former girlfriends that neither one of them noticed the scar during their sexual relations with Petitioner. *See* 2/13/14 Trial Tr. at 44 and 65.

19

Defense counsel could have concluded that there was no need to interview JS, Detective Williams, or Dr. Anderson because he already had an indication what the witnesses' testimony would be. He was prepared for trial, and he performed adequately. His cross-examination of JS emphasized the fact that JS delayed disclosing the sexual abuse for years, despite having friends, teachers, and relatives with whom she could confide. *See* 2/12/14 Trial Tr. at 151-62. Defense counsel elicited testimony from Detective Williams that, although Williams was involved in the case as early as July of 2012, Petitioner was not arrested until some time in 2013. *See* 2/13/14 Trial Tr. at 19-20. Finally, with regard to Dr. Anderson, defense counsel attempted to show that Petitioner complied with the court orders to be examined and photographed. *See id.* at 13-17.

Defense counsel's performance was objectively reasonable, and he subjected the prosecution's case to meaningful adversarial testing. Therefore, Petitioner's constitutional claim lacks merit.

## V. Conclusion

For the reasons given above, the state appellate court's adjudication of Petitioner's first and second claims on the merits was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts. Further, this Court's *de novo* review of Petitioner's third and fourth claims demonstrates that those claims lack merit. Accordingly, the Court grants Respondent's motion to dismiss (Dkt. #5) on alternative grounds and dismisses the habeas petition (Dkt. #1) with prejudice.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims or conclude that the claims deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The Court also declines to grant Petitioner permission to appeal *in forma pauperis*, because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3). Petitioner may apply to the Court of Appeals for a certificate of appealability and leave to proceed *in forma pauperis*.

Dated: September 19, 2019                    s/Sean F. Cox
                                             Sean F. Cox
                                             U. S. District Judge